# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NABIJON N.,

        Petitioner,

v.

MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director, Immigration and Customs Enforcement*;[1] TODD BLANCHE, *Acting U.S. Attorney General*; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; DAVID EASTERWOOD, *Acting Director for ICE Field Office, St. Paul, MN*; and WARDEN, *Sherburne County Facility*,

        Respondents.

Case No. 26-cv-2469 (LMP/LIB)

**ORDER GRANTING
HABEAS PETITION**

---

Jennifer Scarborough, **Law Firm of Jennifer Scarborough, Minneapolis, MN**, and Magdalena B. Metelska, **Metelska Law, P.L.L.C., Hopkins, MN**, for Petitioner.

Pedro del Valle, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

        Petitioner Nabijon N. filed a petition for a writ of habeas corpus, alleging that he has been detained unlawfully by Respondents (the "Government") in violation of the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, and the Fourth Amendment. *See* ECF No. 1 ¶¶ 40–55. Nabijon N. seeks his immediate release. *Id.* at 13. For the reasons below, the Court grants Nabijon N.'s petition in part.

---

[1] David J. Venturella is substituted in place of Todd M. Lyons pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

Nabijon N. is a native and citizen of Tajikistan who has been living in the United States since 2023. ECF No. 1 ¶ 12. He was encountered by Customs and Border Patrol agents near San Diego, California, when he first entered the United States. ECF No. 9-2 at 2. He was arrested for unlawfully entering the United States and served with a Notice to Appear charging him with removability under the INA in July 2023. ECF No. 9-4 at 1. The Department of Homeland Security found that he "did not appear to be a threat to national security, or public safety," and he was released on recognizance because of a lack of bed space. ECF No. 9-2 at 3. He currently resides in Minnesota. ECF No. 1 ¶ 37.

On October 10, 2024, Nabijon N. was arrested in Minnesota and charged with Fifth-Degree Criminal Sexual Conduct (Nonconsensual Sexual Contact) in violation of Minnesota Statutes § 609.3451.1a(1). ECF No. 9-1 at 2. He was released on bond, and the case remains pending in Hennepin County. ECF No. 10-2; *State v. Nabijon N.*, 27-CR-24-18065. On December 27, 2024, Nabijon N. applied for Special Immigrant Juvenile Status ("SIJS"), and on April 28, 2025, United States Customs and Immigration Services ("USCIS") approved his application. ECF No. 1 ¶ 37. Nabijon N. also has applied for and received authorization to work in the United States. *Id.*

On April 16, 2026, Immigration and Customs Enforcement ("ICE") officers encountered Nabijon N. near his home and arrested him. ECF No. 9-1 at 2. ICE transported Nabijon N. to the Sherburne County Jail, served him with an I-200 administrative warrant, ECF No. 9-3, and reinitiated his removal proceedings, *see* ECF No. 9-5. The parties are in agreement that Nabijon N. is detained under 8 U.S.C.

§ 1225(b)(2)(A).  ECF No. 1 ¶ 2; ECF No. 8 at 6; *see also Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026).  Section 1225(b)(2)(A) authorizes detention without bond.

Nabijon N. filed a petition for a writ of habeas corpus on May 4, 2026.  ECF No. 1. In Count 1, Nabijon N. contends that his detention "without a pre-deprivation bond hearing to determine whether he is a flight risk or danger to others" violates the Due Process Clause of the Fifth Amendment.  *Id.* ¶¶ 40–42.  In Count 2, Nabijon N. raises an alternative due process argument, asserting that because he has SIJ status, he is entitled to apply for certain visas when they become available, and that his detention before a visa becomes available to him "violates his Fifth Amendment right to due process."  *Id.* ¶ 44.  In Count 3, Nabijon N. contends that his April 2026 arrest violated the Fourth Amendment because ICE agents had "no reasonable suspicion of illegal presence or probable cause for his arrest at the time."  *Id.* ¶¶ 45–49.  Finally, in Count 4, Nabijon N. contends that his detention operates as an unlawful revocation of his SIJS in violation of federal regulations.  ECF No. 1 ¶¶ 50–54; *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Nabijon N. requests his immediate release from detention.  ECF No. 1 at 13.

The Court ordered the Government to respond by May 12, 2026, with any reply from Nabijon N. due by May 19, 2026.  ECF No. 6.  The Government and Nabijon N. timely provided this briefing.  ECF Nos. 8, 10.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'"

3

*Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)).  The protections of habeas corpus extend to those in immigration detention.  *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

Having carefully considered the parties' arguments, the Court concludes that Nabijon N. is successful on one of his due process claims and is entitled to a bond hearing. Nabijon N.'s other claims are denied.

## ANALYSIS

### I.    Due Process Rights and Bond Hearing

Nabijon N.'s first claim to relief alleges that his current detention violates his due process rights because he has not been provided a bond hearing.  ECF No. 1 ¶¶ 40–42.  The Government responds that it can detain Nabijon N. during the pendency of his removal proceedings because the INA "does not prevent placing a noncitizen with SIJS into removal proceedings."  ECF No. 8 at 3.  The Government further argues that Nabijon N. receives all the process to which he is entitled through his removal proceedings and that Nabijon N. can challenge his removability within those proceedings.  *Id.* at 4.  But the Government misinterprets Nabijon N.'s first claim for relief.  Again, in Count 1, Nabijon N. claims that his detention is unlawful because he was deprived of his liberty interest in remaining free from detention.  ECF No. 1 ¶¶ 40–42.  He does not, as the Government interprets Count 1, argue that his removal proceedings are unlawful.

When properly framed, the Court concludes that Nabijon N.'s continued detention without a bond hearing violates his due process rights.  The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process

4

of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see, e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."). Accordingly, because the Fifth Amendment entitles all "persons" to due process of law, noncitizens may challenge the legality of their detention pending removal through a habeas petition. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).

This Court, and many others in this District, have concluded that noncitizens similarly situated to Nabijon N. are entitled to raise due process challenges to their mandatory detention during the pendency of their removal proceedings. *See, e.g.*, *Anthony Javier R. M. v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306, at *3–7 (D. Minn. May 29, 2026); *Milton A. v. Brott*, No. 26-cv-2580 (SRN/EMB), 2026 WL 1493709, at *2–3 (D. Minn. May 28, 2026); *Berman J. P. H. v. Margolin*, No. 26-cv-2131 (JRT/EMB), 2026 WL 1245758, at *1–2 (D. Minn. May 6, 2026); *David J. C. P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *2 (D. Minn. Apr. 23, 2026); *Derling M. G. v. Bondi*, No. 26-cv-2340 (PJS/DTS), ECF No. 8 at 6–11 (D. Minn. May 29, 2026) (holding that while mandatory detention might nevertheless violate the Due Process Clause, Derling's present detention pursuant to 8 U.S.C. § 1225(b)(2) does not).

5

Given the conclusion that the Due Process Clause applies to Nabijon N., "the question remains what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The answer requires the Court to conduct a balancing test. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (citation omitted) ("'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."); *Morrissey*, 408 U.S. at 481 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). But "there can be no doubt" that the Due Process Clause requires, at a minimum, that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).

Again, this Court has concluded that the relevant balancing test requires the Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that any such procedural requirement would entail. *Anthony Javier R. M.*, 2026 WL 1506306, at *8 (citing *Mathews*, 424 U.S. at 335).

As to the private interest involved, there is perhaps no greater interest than being free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Parham v. J. R.*, 442 U.S. 584, 600 (1979) (discussing the "substantial liberty interest in not being confined unnecessarily"). Here, as in *Anthony Javier R. M.*, Nabijon N. was granted SIJS,

has established residence in Minnesota, and is authorized to work in the United States. ECF No. 1 ¶ 37. Courts have recognized the "self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their 'continued liberty.'" *Id.* (quoting *Abdirashid H. M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *4 (D. Minn. Jan. 9, 2026)). For these reasons, the Court concludes that this factor weighs in Nabijon N.'s favor.

Likewise, the risk that Nabijon N. is erroneously deprived of his interest in remaining free from unwarranted detention is high. It is long standing that "administrative officers, when executing the provisions of a statute involving the liberty of persons, may [not] disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution." *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). One of these principles is that "no person shall be deprived of his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends." *Id* at 101. And an "individualized bond hearing" at which both Nabijon N. and the Government can be heard on whether ongoing detention is appropriate "would alleviate th[at] risk."[2] *Abdirashid H. M.*, 2026 WL 127698, at *4. On the contrary, mandatory detention does not provide any process for Nabijon N. to present

---

[2] To be sure, Nabijon N. asks the Court for his immediate release. ECF No. 1 at 13. But he also acknowledges that, as relevant to *this* due process claim, it is the Government's decision to deny him a "pre-deprivation bond hearing" that violates his right to due process. *Id.* ¶¶ 25, 42. The Court agrees. *Anthony Javier R. M.*, 2026 WL 1506306, at *9; *see also Milton A.*, 2026 WL 1493709, at *4 (collecting similar cases and concluding that "[a]s courts have found, the appropriate remedy is an individualized bond hearing").

his case for release pending his removal proceedings, which could take some time given his SIJ status. This factor weighs in Nabijon N.'s favor.

As for the Government's interest, the Government certainly has a substantial interest in ensuring that noncitizens in removal proceedings appear at their immigration hearings. But the Government has presented no argument that its interests would be inadequately served simply because Nabijon N. might be released on bond. Nor does the Government assert that providing such a hearing would impose any meaningful burden itself. Regardless, even assuming there would be some limited burden imposed on the Government, that burden does not outweigh Nabijon N.'s substantial liberty interest. *See Abdirashid H. M.*, 2026 WL 127698, at *5 (finding that a bond hearing "would impose minimal, if any, financial or administrative burden" on the Government). This factor also weighs in Nabijon N.'s favor.

Because the *Mathews* factors all favor Nabijon N., the Court concludes that continued detention without a bond hearing violates the Due Process Clause, "especially considering" Nabijon N.'s "grant of Special Juvenile Immigrant Status." *Anthony Javier R. M.*, 2026 WL 1506306, at *10. Accordingly, the Court grants Nabijon N.'s habeas petition insofar as he seeks an individualized bond hearing.

## II.      Due Process Rights and SIJS

Nabijon N. alternatively contends that he has a due process right to "remain in the U.S. while" his SIJ status remains valid. ECF No. 10 at 3; *see also* ECF No. 10 at 4–5. Indeed, Nabijon N. argues that, as long as he has SIJS, he has a due process right to remain

in the United States to present his application to become a lawful permanent resident. ECF No. 10 at 4–5. As such, he argues he is entitled to immediate release. ECF No. 1 at 13.

But Nabijon N. conflates his due process right to be free from unlawful *detention* pending his removal proceedings, which the Court can remedy through habeas relief, *see Munaf v. Geren*, 553 U.S. 674, 693 (2008), and his potential due process right to be exempt from *removal*. In support, Nabijon N. points to *Walter A. v. Easterwood*, No. 26-cv-1393 (SRN/LIB), 2026 WL 836428 (D. Minn. Mar. 26, 2026); *Osorio-Martinez v. Att'y Gen. U.S. of Am.*, 893 F.3d 153 (3d Cir. 2018); and *Xol-Maas v. Francis*, No. 26-cv-00025 (JAV), 2026 WL 457005 (S.D.N.Y. Feb. 18, 2026), ECF No. 1 ¶ 44. But those cases are inapplicable. In both *Walter A.* and *Xol-Maas*, the petitioners were subject to a final order of removal and therefore detained pursuant to 8 U.S.C. § 1231. *Walter A.*, 2026 WL 836428, at *17; *Xol-Maas*, 2026 WL 457005, at *9. Under *Zadvydas*, 533 U.S. at 690, however, a noncitizen detained under Section 1231 may not be detained if removal is not reasonably likely. The petitioners in *Walter A.* and *Xol-Maas* argued that their detention was unlawful pursuant to *Zadvydas* because their removal was not "significantly likely in the reasonably foreseeable future." *Walter A.*, 2026 WL 836428, at *19; *Xol-Maas*, 2026 WL 457005, at *7–9. Both courts agreed, concluding that the petitioners have a due process right to have their SIJS applications considered, and that the due process right prevented them from being removed in the reasonably foreseeable future. Likewise, *Osorio-Martinez* considered a group of noncitizens subject to final orders of removal, but who sought habeas relief to "prevent the Government from executing the expedited removal orders" against them. 893 F.3d at 159, 175. As in *Walter A.*, the due process

analysis focused on whether the removal itself was constitutional; finding that it was not, the Third Circuit found no lawful basis for detention. *Id.* at 178.

Nabijon N. does not have a final order of removal. He is merely detained pending removal proceedings under 8 U.S.C. § 1225(b)(2)(A). As a result, *Zadvydas* is inapplicable. Section 1225(b)(2)(A), in turn, provides for the mandatory detention of anyone "seeking admission" who is "not clearly and beyond a doubt entitled to be admitted." Nabijon N. acknowledges that he is subject to Section 1225(b)(2), ECF No. 1 ¶ 2 (citing *Avila,* 170 F.4th 1128), and he has provided no authority that suggests his SIJ status protects him from Section 1225(b)(2)'s mandatory detention scheme. Whether SIJS prevents Nabijon N.'s removal is a question that he can present directly in the removal proceedings, but it is not a proper basis for a habeas challenge here.

## III.   Fourth Amendment

Nabijon N. is not entitled to immediate release under the Fourth Amendment. Nabijon N. argues that because he has SIJS, and because those with SIJS are deemed "paroled" into the United States, arresting officers "had no reasonable suspicion of illegal presence or probable cause for his arrest." *Id.* ¶ 49; ECF No. 10 at 6–7 (citing 8 U.S.C. § 1255(h)(1)).

But Nabijon N.'s assertion rests on the incorrect premise that SIJS insulates him from detention and removal. *See, e.g.*, *Jines v. Soto*, No. 26-cv-1676-ESK, 2026 WL 810030, at *2 (D.N.J. Mar. 24, 2026); *see also, e.g.*, *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023) ("Petitioner is removable despite his SIJS."); *Del Cid v. Bondi*, No. 3:25-cv-304, 2025 WL 2985150, at *4 (W.D. Pa. Oct. 23, 2025) (noting that the

"Government may ultimately remove an individual with SIJ Status"); *Benito Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) (holding that a petitioner's receipt of SIJS "has no effect on ICE's statutory and regulatory authority to detain him"). And SIJS "does not make [Nabijon N.'s] presence lawful." *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018).

Moreover, Nabijon N. fails to grapple with the I-200 warrant issued for his arrest. The Attorney General may issue an administrative arrest warrant, and ICE executes such a warrant by use of the I-200 form. *Jouquin C. S. v. Bondi*, No. 26-cv-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026). That is what occurred here. *See* ECF No. 9-3. To be sure, the warrant does not appear to have been served on Nabijon N. until after he arrived at the Sherburne County Jail. *Id.* But the statute does not require that a warrant be served to be effective. *See Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), ECF No. 14 at 3–6 (D. Minn. Feb. 3, 2026). Nabijon N. makes no argument that the warrant was defective or otherwise could not have justified his arrest. As such, he does not carry his burden to show that his detention is unlawful "by a preponderance of the evidence." *Jose J. O. E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). Nabijon N.'s Fourth Amendment claim therefore must be denied.

## IV.    Revocation of SIJS

Finally, Nabijon N. contends that his arrest and detention operate as a "*de facto*, and unlawful, revocation of his SIJS." ECF No. 1 ¶ 54; *see also* ECF No. 10 at 7. It is true that before USCIS revokes a noncitizen's SIJS, it must follow certain regulations found in

11

8 C.F.R. §§ 240.11(j) and 205.2. At minimum, USCIS must not revoke SIJS until it provides notice to the noncitizen. *Id.* § 205.2(a).

But the Government has not revoked Nabijon N.'s SIJS. Indeed, the Government argues that despite his SIJS, the Government may detain and begin removal proceedings against Nabijon N. *See, e.g.*, ECF No. 8 at 3 ("Despite Petitioner's statements to the contrary, the INA does not prevent placing a noncitizen with SIJS into removal proceedings."); *id.* at 4 ("The immigration judge may consider any form of relief he has from removability, to include special immigrant juvenile status."). And the Court does not agree with Nabijon N. that his arrest and detention are incompatible with his SIJ status; courts have repeatedly held that noncitizens with SIJS are, at least statutorily, eligible for removal. *See supra* Sections II and III. There is, accordingly, nothing inherently incompatible with the Government initiating removal proceedings while Nabijon N. retains SIJS.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.  Nabijon N.'s Verified Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED in part,** as follows:

    a.  By no later than **5:00 p.m. on June 25, 2026**, the Government must provide Nabijon N. with a bond hearing consistent with 8 C.F.R. § 1003.19(d);

    b.  If the Government does not provide Nabijon N. with a bond hearing in accordance with this Order, the Government must immediately release Nabijon N. from detention; and

12

2.      By no later than **5:00 p.m. on June 26, 2026**, the Government must provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Nabijon N.'s release from detention.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 18, 2026                         *s/Laura M. Provinzino*
                                                Laura M. Provinzino
                                                United States District Judge